UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN JOSEPH SIMMONS,<br><br>  Plaintiff,<br><br>  v.<br><br>CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES, et al.,<br><br>  Defendants. | Case No. 20-cv-09282-EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION, AND RE-ESTABLISHING AMENDMENT SCHEDULE**<br><br>Docket Nos. 22, 23 |

## I. INTRODUCTION

Plaintiff Melvin Simmons, a California state prisoner incarcerated at the California Correctional Institution, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 ("Complaint"), and named seven defendants. *See* Docket No. 1. The Honorable Lucy H. Koh reviewed the Complaint pursuant to 28 U.S.C. §§ 1915, 1915A, and dismissed the Complaint with leave to amend in part. *See* Docket No. 12. This action subsequently was reassigned to the undersigned. *See* Docket Nos. 16-17.

Mr. Simmons filed a first amended complaint ("FAC"), which the Court screened. *See* Docket No. 13; *see also* 28 U.S.C. §§ 1915, 1915A (requiring a court to screen all prisoner filings). The Court dismissed the FAC with leave to amend in part, and without leave to amend as to claims for which Mr. Simmons lacked standing, which were not cognizable in a federal civil rights proceeding, or which Mr. Simmons had failed to support with facts despite a previous caution from Judge Koh. *See* Docket No. 21 at 9-15. The Court also dismissed defendants who were not personally involved in the wrongs alleged by Mr. Simmons. *See id.* at 7-9.

Rather than filing a second amended complaint, Mr. Simmons filed a "motion for leave of

court for the vindication of" his civil rights "in conjunction with Cal Civil Code § 3412" ("Vindication Motion"), and a motion for relief from the Court's screening order ("Reconsideration Motion"). *See* Docket Nos. 22, 23.[1] In addition to challenging the substance of the Court's screening order, these motions suggest that Mr. Simmons is unhappy with the assignment of this action to the undersigned.

For the reasons stated below, the Court **DENIES** Mr. Simmons's motions. The Court **DENIES** Mr. Simmons's implied request for recusal, without prejudice to Mr. Simmons filing such a request in a motion. The Court will give Mr. Simmons an additional chance to file a second amended complaint.

## II.     ANALYSIS

A.     Over-Detention Claims

Mr. Simmons was committed to the custody of the California Department of Corrections and Rehabilitation ("CDCR") on September 22, 1987. *See* Cal. Dep't of Corr. & Rehab., Inmate Locator, https://inmatelocator.cdcr.ca.gov/ (results for "Melvin Simmons") (last visited Jan. 6, 2022).[2] Court records show that Mr. Simmons was sentenced to, *inter alia*, life with the possibility of parole by the Superior Court of Los Angeles County.[3] Mr. Simmons contends that he should have been released on March 18, 2001, but that he has been over-detained "twenty years

---

[1] These motions were filed by Mr. Simmons's daughter and "next friend," Chamel Simmons. See Docket No. 23 at 17-18. This is impermissible, and any future filings must come either from Mr. Simmons or from an attorney that Mr. Simmons has hired to act on his behalf. *See Cato v. United States*, 70 F.3d 1103, 1105 n.1 (9th Cir. 1995) (explaining that only attorneys may represent another person). The Clerk shall strike any future filings from Ms. Chamel Simmons.

[2] It is proper for the Court to take judicial notice of these records. *See United States v. Lucas*, 841 F.3d 796, 802 (9th Cir. 2016) (taking judicial notice of the publicly available information from the inmate locator for the Federal Bureau of Prisons); *United States v. Basher*, 629 F.3d 1161, 1165 & n.2 (9th Cir. 2011) (same).

[3] *See People v. Simmons*, 213 Cal. App. 3d 573, 575 (Ct. App. 1989) ("After a jury trial, appellants Melvin Simmons, Jr., . . . were found guilty of kidnapping to commit robbery[,]. . . forcible rape[,] . . . attempted robbery[,] . . . and . . . assault with a deadly weapon upon a peace officer . . . . The trial court denied probation and sentenced appellant Simmons to life imprisonment with the possibility of parole for the kidnapping to commit robbery . . . , to seven years for the forcible rape . . . to be served consecutively to the life term . . . and to . . . two years, for assault upon a peace officer . . . .") (citations omitted).

1  under the deceased person's name Simmons Melvin Jr."[4]  FAC at 15.  The CDCDR Inmate
2  Locator states that Mr. Simmons was eligible for parole in January 2001, and that Mr. Simmons's
3  parole was considered and rejected by the Board of Parole Hearings on February 29, 2000; May 2,
4  2002; October 7, 2004; January 12, 2007; October 10, 2007; September 17, 2009; May 18, 2007;
5  and August 22, 2019.  *See* Cal. Dep't of Corr. & Rehab., Inmate Locator, https://inmatelocator
6  .cdcr.ca.gov/ (results for "Melvin Simmons") (last visited Jan. 6, 2022).  The Court dismissed Mr.
7  Simmons's over-detention claims without leave to amend because any relief from the Board's
8  decisions must be pursued in a habeas action, and any claim for damages is *Heck*-barred.  *See*
9  Docket No. 22 at 9-11.
10  In his Vindication Motion, Mr. Simmons argues that the Court should "cancel" the
11  "abstract of judgment – commitment form" issued by the Los Angeles County Superior Court.
12  Vindication Mot. at 1, 3.  As the Court already explained to Mr. Simmons, his only relief from his
13  conviction is to file a habeas action.  *See* Docket No. 22 at 9-11.  Because he was convicted in Los
14  Angeles County Superior Court, such an action must be filed in the United States District Court
15  for the Central District of California.
16  Because the instant action is the wrong vehicle, filed in the wrong court, Mr. Simmons's
17  claims related to his conviction and alleged over-detention remain **DISMISSED WITHOUT**
18  **LEAVE TO AMEND,** but without prejudice to filing the proper action in the proper court.
19  B.  Property Theft Claims
20  In 1966, real estate in Richmond, California was placed into a trust or similar arrangement
21  by Melvin Simmons, Sr.  *See id.* at 8-9.  Although it is not clear from the FAC, the Court assumes
22  that Mr. Simmons inherited, or expected to inherit, this real estate.  *See id*. at 8-11.  This real estate
23  was taken by the State of California "in [a] bailment document" in 1987.  *Id*. at 11.  Mr. Simmons
24  alternately argues that this was an act of fraudulent conversion, *id*. at 14, and that it was an
25  exercise of eminent domain, *id*. at 11.  The Court rejected Mr. Simmons's property-theft claim as

---

[4] In a portion of the FAC in which Mr. Simmons identifies the parties to this action, he alternately describes himself as "Simmons Melvin Jr. . . . the human being, flesh and blood man, named as his now deceased half-blood brother," as "Melvin Joseph (Preston Roushion Jr.) Simmons," and as "Melvin Joseph Simmons."  FAC at 4.

3

time-barred.[5]  *See* Docket No. 22 at 12-13.

In his Reconsideration Motion, Mr. Simmons states that he "discover[ed] . . . facts constituting a violation in the abstract of judgment – commitment [form]" in 2018.  Recon. Mot. at 10-11.  He appears to believe that this entitles him to re-start the statute of limitations.  *See id*.  However, Mr. Simmons specifically argues that property was taken from him in the document which committed him to prison in 1987.  *See id*. at 11 (citing this document); *see also* FAC at 11 (referring to this as a "bailment document," and stating it was issued on September 18, 1987).  Mr. Simmons thus had access to the document allegedly responsible for the deprivation of property for thirty-one years before discovering the alleged fraud.

"The discovery rule requires the plaintiff to be diligent in discovering the critical facts of the case."  *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1278 (9th Cir. 2017) (per curiam).  "A cause of action accrues 'even if the full extent of the injury is not then known.'"  *Gregg v. State of Hawaii DPS*, 870 F.3d 883, 887 (9th Cir. 2017) (citation omitted).  Accrual starts when the plaintiff can know that the injury was caused by defendants' actions.  *Id.* at 889 (finding accrual when plaintiff knew, or could know through reasonable diligence, that her emotional discomfort was caused by defendant's improper conduct in therapy).  Even if Mr. Simmons's property somehow fraudulently was taken by the abstract of judgment recording his conviction, the three decades in which he had access to his conviction documents was more than enough time to discover that fact.  Mr. Simmons is not entitled to re-start the clock in 2018.[6]

Because Mr. Simmons waited far too long to vindicate his rights, his claims related to the

---

[5] The Court's screening order includes a typographical error.  The Court stated that "[t]he instant action is thus nineteen years too late."  Docket No. 21 at 13.  In fact, it is twenty-eight years too late.  *Compare id*. (noting that the statute of limitations ran on Mr. Simmons's property suit in 1992) *with* Docket No. 1 at 3 (the instant action was filed on or after December 5, 2020).

[6] In addition, as the Court previously explained, California prevents persons from suing to recover property unless they have been in possession of that property within the last five years.  *See* Docket No. 21 at 11 (citing Cal. Civ. Proc. Code §§ 318; 319); *see also Rumie v. Martinus*, No. A108711, 2006 WL 245577, at *5 (Cal. Ct. App. Feb. 2, 2006) (unpublished) (prisoner could not bring suit for the recovery of property because he had not been seized of that property within the last five years).  If Mr. Simmons's property somehow was taken from him in an abstract of judgment issued in 1987, and as Mr. Simmons has been incarcerated since 1987, he cannot have been in possession of his property in the legal or physical sense within the necessary time period.

4

1  loss of property remain **DISMISSED WITHOUT LEAVE TO AMEND**.

2  C.  Transfer Claims

3  On March 2, 2020, Mr. Simmons was transferred to San Quentin State Prison ("San Quentin"). FAC at 18. He contends that this transfer put him at "unwarranted risk of contracting the COVID-19 virus." *Id*. Mr. Simmons does not state that he actually contracted the COVID-19 virus. *See id*. Between March 2 and March 5, 2020, Mr. Simmons was transferred to Pelican Bay. *See id*. Mr. Simmons contends that this transfer put him at "unwarranted risk of physical assault," because he has enemies at Pelican Bay. *See id*. Mr. Simmons does not state that he was actually physically assaulted by enemies at Pelican Bay. *See id*. The Court rejected Mr. Simmons's transfer-related claims because Mr. Simmons suffered no injury which could be redressed, and thus lacked standing. *See* Docket No. 22 at 11-12.

Neither the Vindication Motion nor the Reconsideration Motion identifies any harm suffered by Mr. Simmons as a result of the transfers, and so his transfer-related claims remain **DISMISSED WITHOUT LEAVE TO AMEND**.

D.  Claims as to Which Amendment was Permitted

On March 5, 2020, while Mr. Simmons was detained at Pelican Bay, Nurses Garcia and Justus informed "custody staff" that Mr. Simmons "was homicidal and delusional." *Id*. at 19. Mr. Simmons contends that this statement was false and an insult to him. *See id*. Mr. Simmons claims that, as a result of this statement, he was kept under observation for 24 hours "under bright lights and nude." *Id*. The Court dismissed without leave to amend Mr. Simmons's claims regarding informational privacy, but allowed him to amend his claims as to the conditions under which he was kept in observation. *See* Docket No. 21 at 13-17. Mr. Simmons's Reconsideration Motion neither argues in favor of reviving his informational privacy claim, nor provides the facts necessary for his conditions claims to survive screening. *See generally*, Recon. Mot. The Court will give Mr. Simmons one final chance to provide facts to support his challenge to the conditions under which he was observed. If Mr. Simmons again fails to provide the facts necessary to state a claim, then claims related to the conditions of observation will be dismissed with prejudice.

Mr. Simmons alleges that on March 17, 2020, he was physically attacked by "Correctional

United States District Court
Northern District of California

5

1  Sergeant Mereno . . . Correctional Officer A. Tidwell, and other Pelican Bay State Prison
2  Correctional Officers" whose identities are unknown at this time. *Id*. at 20. Mr. Simmons states
3  that these officers tackled him and wrestled him to the ground; put him in a chokehold; punched,
4  kicked, stomped, and kneed him; put him in shackles; and suffocated him by placing a "spit mask"
5  over his "entire head." *Id*. at 21. Although Mr. Simmons claims that this attack was a result of the
6  statement by Nurses Garcia and Justus, *see id*. at 20, he also claims that this attack resulted from
7  his demand to speak to a correctional counselor about his alleged over-detention, *see id*. The
8  Court construed Mr. Simmons's allegations as an attempt to argue he had been subjected to
9  excessive force, and granted Mr. Simmons leave to amend that he might allege the force was not
10  applied in a good-faith effort to maintain or restore discipline. *See* Docket No. 21 at 18. Mr.
11  Simmons's Reconsideration Motion does not provide any facts necessary for his excessive force
12  claim to survive screening. *See generally*, Recon. Mot. The Court will give Mr. Simmons one
13  final chance to provide facts to support his allegation that he was subjected to excessive force. If
14  Mr. Simmons again fails to provide the facts necessary to state a claim, then this claim will be
15  dismissed with prejudice.

16  E.      Implied Request for Recusal

17  Mr. Simmons accuses the undersigned of dismissing the FAC with leave to amend because
18  of a bias against Mr. Simmons. Notably, Mr. Simmons suggests that the undersigned ruled in
19  such a way because the undersigned is of a different race than Mr. Simmons. *See* Recon Mot. at 5,
20  9 (referring to "racial or personal bias"); 15 (arguing that the screening order "constitutes racial
21  bias"); 17 ("Like his predecessor United States District Judge Lucy H. Koh[,] [w]ho was
22  disqualified[,] District Court Judge[ ]Edward M. Chen is also Asian-[A]merican,[ ]whose bias and
23  racial views towards all African-[A]mericans[ ]have impaired the dignity of the Judge's office[
24  ]and interfered with this Judge's performance of his duties to fairly and impartially administer
25  justice . . . .")

26  The standard for recusal is whether a reasonable person with knowledge of all the facts
27  would conclude that the judge's impartiality might reasonably be questioned. *United States v.*
28  *McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012); *Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th

1  Cir. 1993) (citation omitted).  The reasonable person in this context means a well-informed,

2  thoughtful observer, as opposed to a hypersensitive or unduly suspicious person.  *Clemens v.*

3  *United States Dist. Ct. for the Cent. Dist. of Cal.*, 428 F.3d 1175, 1178 (9th Cir. 2005).  It is well-

4  settled that adverse rulings are not an adequate basis for recusal.  *See Leslie v. Grupo ICA*, 198

5  F.3d 1152, 1160 (9th Cir. 1999) (court's adverse rulings are not an adequate basis for recusal);

6  *Liteky v. United States*, 510 U.S. 540, 555 (1994) ("judicial rulings alone almost never constitute a

7  valid basis for a bias or partiality motion").

8        In addition to failing to file a formal recusal motion, Mr. Simmons has identified no

9  evidence that the undersigned is biased other than an adverse ruling.  Mr. Simmons's implied

10  request for recusal is **DENIED**.  If Mr. Simmons wishes to seek recusal of the undersigned, he

11  may do so in a formal motion supported by proper evidence.

### III.     CONCLUSION

13        For the foregoing reasons, Mr. Simmons's Vindication and Reconsideration Motions are

14  denied.  As explained in the Court's prior order, Mr. Simmons may amend:

- His Fourth Amendment claim for being held in the nude during suicide observation on March 5, 2020, against the correctional officers who placed Mr. Simmons under observation and who observed Mr. Simmons in that state;
- His Eighth Amendment claim for being held under bright lights during suicide observation on March 5, 2020, against the correctional officers who placed Mr. Simmons under observation and who observed Mr. Simmons in that state;
- His Eighth Amendment claim for being attacked by correctional officers on March 17, 2020, against Sergeant Mereno, Officer Tidwell, and the Doe correctional officers.

24  All other Defendants and claims remain dismissed without leave to amend.  The Court again notes

25  for Mr. Simmons's benefit that he is permitted to sue Doe officers, but that his action will proceed

26  more quickly if he is able to discover the names of the Doe officers and to include them in his

27  second amended complaint.

28        A second amended complaint must be filed no later than **May 1, 2023**, and must include

the caption and civil case number used in this order and the words SECOND AMENDED COMPLAINT on the first page. Plaintiff is cautioned that his second amended complaint must be a complete statement of his claims. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled."). Plaintiff also is cautioned that he, and not his "next friend" must file his second amended complaint. *See supra* n. 1.

Failure to file the second amended complaint by the deadline **will** result in the dismissal of the action.

This order disposes of Docket Nos. 22 and 23.

**IT IS SO ORDERED**.

Dated: March 9, 2023

_____
EDWARD M. CHEN
United States District Judge